UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| GLENWOOD HALSTED LLC, an Illinois limited liability company, | ) ) ) | |
| Plaintiff, | ) ) | |
| vs. | ) ) | 11 C 6772 |
| VILLAGE OF GLENWOOD, an Illinois municipal corporation, et. al., | ) ) ) ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION

CHARLES P. KOCORAS, District Judge:

This case comes before the Court on the motion of Defendants Village of Glenwood ("Glenwood"), Kerry Durkin ("Durkin"), and Kevin Welsh ("Welsh") (collectively, "Defendants") to dismiss the complaint of Plaintiff Glenwood Halsted LLC ("Plaintiff") pursuant to Federal Rule of Civil Procedure 12(b)(6). For the reasons stated below, the motion is granted in part and denied in part. Additionally, the Court dismisses all claims against Donna Gayden without prejudice.

## BACKGROUND[1]

Plaintiff is a company that owns a shopping center complex (the "Shopping Center") in Glenwood, Illinois with between twenty-four and thirty units available for

---

[1] For purposes of the motion to dismiss, the Court accepts the allegations of the complaint as true. *Warth v. Seldin*, 422 U.S. 490, 501 (1975).

rent. Plaintiff alleges that, beginning in 2008, Defendants began a scheme to diminish the value of the Shopping Center and force Plaintiff to sell it to Glenwood or Defendants' friends at a substantially reduced price. At all relevant times, Durkin was the Mayor of Glenwood and Welsh was a building inspector for Glenwood.

**Defendants' Interference with Plaintiff's Existing and Prospective Tenants**

Plaintiff alleges that, between 2008 and 2011, Defendants sought to diminish the value of the Shopping Center and force Plaintiff to sell it at a substantially reduced price by influencing Plaintiff's existing and prospective tenants to leave the Shopping Center or to not rent from Plaintiff. For instance, Durkin and Welsh warned prospective tenants, including a church and a grocery store, that Glenwood was going to condemn the Shopping Center, or that they would not support the prospective tenant's business activity. Durkin also informed several existing and prospective tenants that the Shopping Center was going into foreclosure, that Glenwood was going to condemn the Shopping Center, and/or that Defendants were trying to "starve out" the Plaintiff. Welsh told one of Plaintiff's existing tenants that Glenwood would be taking over Plaintiff's property, Glenwood was "waiting out" Plaintiff in anticipation of Plaintiff shutting down its business due to a lack of tenants, Glenwood would be fining Plaintiff's tenants, Glenwood was trying to drive down the value of Plaintiff's property, and that Welsh would get the Governor or another developer to purchase Plaintiff's property.

Additionally, in 2010 and 2011, Defendants interfered with Plaintiff's ability to lease property to prospective tenants by declining to issue business licenses to those tenants. For example, two prospective tenants sought licenses from Glenwood to operate a day care center and a tavern. Glenwood declined to issue licenses to those prospective tenants even though the previous tenants used each property for the exact same purpose.

**Building Code Violations**

Beginning in September 2009, Defendants and their agents began issuing false or exaggerated building code violations to the Shopping Center. Welsh repeatedly went to the Shopping Center, sometimes up to three times per day, to conduct inspections. Welsh did not conduct such frequent inspections of other commercial shopping centers in Glenwood. Although Defendants initially threatened significant fines for the alleged violations, Defendants dismissed or settled the code violations for a minimal fine after Plaintiff contested the violations and threatened a lawsuit.

**Durkin's Request for Financial Benefits from Plaintiff**

According to Plaintiff, Durkin and others sought financial benefits from Plaintiff. For example, around September 2009, an unnamed individual purportedly representing Durkin told Plaintiff that it needed to do "public relations" work, which Plaintiff interpreted as a request for financial contributions to Durkin for his mayoral campaign. Additionally, an unnamed individual, seeking employment as Plaintiff's consultant, told

Plaintiff that it needed to do "public relations" and claimed that his services were necessary to obtain what Plaintiff wanted from Durkin.

In September 2010, Durkin requested that Plaintiff provide him with rent-free use of property within the Shopping Center for his election campaign. Plaintiff understood Durkin's request to be an ultimatum to provide financial benefits to Durkin or suffer adverse consequences from Glenwood. Before this, Durkin told Plaintiff to do what he said or he would kick Plaintiff out of town and sell the Shopping Center to another developer.

**Statements about Plaintiff's Owners**

Plaintiff's owners are of Greek descent. Durkin stated that "two cheap Greeks own" the Shopping Center, so "why should we give them the money?" The complaint is unclear regarding whether Durkin was referring to money to purchase the Shopping Center or to purchase space for his election campaign or something else. Additionally, at a public meeting in 2010, Durkin and Welsh called Plaintiff's owners derogatory names.

**Glenwood's Offer to Purchase the Shopping Center**

On October 18, 2011, Donna Gayden ("Gayden"), the administrator of Glenwood, sent a letter to Plaintiff offering for Glenwood to purchase the Shopping Center at a price below fair market value. Gayden indicated that Glenwood would institute proceedings

to acquire the property by eminent domain if Plaintiff did not sell the Shopping Center at the specified price within 60 days.

**Plaintiff's Complaint**

Plaintiff sued Defendants, asserting equal protection, substantive due process, and takings claims under 42 U.S.C. § 1983, a claim under the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1962(c), and a state law claim for tortious interference. Plaintiff sued Durkin and Welsh in their official and individual capacities.

**Gayden's Bankruptcy Filing**

Plaintiff also named Gayden as a defendant in the complaint. On February 16, 2012, Gayden filed a bankruptcy petition, which automatically stays this action against Gayden. *See* 11 U.S.C. § 362(a). To proceed with this action against the remaining Defendants, the Court dismisses Plaintiff's claims against Gayden without prejudice. Plaintiff may move to reinstate the claims against Gayden after the resolution of Gayden's bankruptcy case if permissible under the law.

## LEGAL STANDARD

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). To survive a motion to dismiss, the complaint must contain sufficient facts to state a facially plausible claim for relief.

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). In ruling on a motion to dismiss, a court accepts the well-pleaded allegations in the complaint as true, construes the allegations of the complaint in the light most favorable to the plaintiff, and draws all reasonable inferences in favor of the plaintiff. *Hentosh v. Herman M. Finch Univ. of Health Scis./The Chi. Med. Sch.*, 167 F.3d 1170, 1173 (7th Cir. 1999).

## DISCUSSION

Defendants move to dismiss Plaintiff's equal protection claim, substantive due process claim, takings claim, civil RICO claim, and supplemental state law claim. Pursuant to Plaintiff's consent, the Court dismisses the takings claim without prejudice. The Court addresses Plaintiff's remaining claims below.

**I.     Equal Protection Claim**

"The Equal Protection Clause of the Fourteenth Amendment prohibits state action that discriminates on the basis of membership in a protected class or irrationally targets an individual for discriminatory treatment as a so-called 'class of one.'" *Reget v. City of La Crosse*, 595 F.3d 691, 695 (7th Cir. 2010) (citing *Enquist v. Or. Dep't of Agric.*, 553 U.S. 591 (2008)). To state a suspect class or class-of-one equal protection claim, a plaintiff must allege that a state actor intentionally treated him differently than others similarly situated. *Harvey v. Town of Merrillville*, 649 F.3d 526, 531 (7th Cir. 2011); *LaBella Winnetka, Inc. v. Vill. of Winnetka*, 628 F.3d 937, 942 (7th Cir. 2010). To be

similarly situated, a plaintiff and his comparators must be identical or directly comparable in all material respects. *LaBella*, 649 F.3d at 531. Whether others are similarly situated to the plaintiff is usually a question of fact. *Id.* However, dismissal at the pleading stage is appropriate where the pleadings demonstrate that plaintiff and the comparators are different in material respects. *Id.*

Plaintiff alleges that Defendants intentionally treated it differently than other commercial shopping centers in Glenwood (class-of-one theory) and/or those not owned by persons of Greek descent (suspect class theory). Plaintiff alleges, among other things, that Defendants did not interfere with the other commercial shopping centers' tenants and did not charge the other commercial shopping centers with unwarranted building code violations.

Defendants, relying heavily on *LaBella*, argue that dismissal is appropriate because Plaintiff fails to allege facts tending to show that it was similarly situated to any of the comparators. More specifically, Defendants argue that Plaintiff fails to identify any similarly situated commercial shopping centers or state any specific facts tending to show that other commercial shopping centers are similarly situated, such as the shopping center's type of business, size, or interactions with Defendants. Defendants misstate the holding in *LaBella*. In *LaBella*, the Seventh Circuit dismissed the plaintiff's equal protection claim because the pleadings revealed that the plaintiff and the identified

comparators were different in material respects. 628 F.3d at 942 (dismissing equal protection claim where "key difference[s]" existed between plaintiff and the alleged comparators). Unlike in *LaBella*, the instant complaint does not demonstrate, as a matter of law, whether the other shopping centers are similarly situated to Plaintiff. Contrary to Defendants' contention, *LaBella* does not require Plaintiff to specifically name the similarly situated entities that were treated more favorably. Significantly, less than a week ago on March 28, 2012, the Seventh Circuit expressly confirmed that a plaintiff need not identify specific comparators in the complaint. *Geinosky v. City of Chi.*, 2012 WL 1021141, at *3 n.3 (7th Cir. Mar. 28, 2012) ("we see no basis for requiring the plaintiff to identify the [similarly situated] person *in the complaint*") (emphasis in original). Further, Plaintiff cannot be expected to plead facts concerning Defendants' interactions with third parties without the benefit of discovery. Because Plaintiff's allegations are sufficient, the Court denies Defendants' motion to dismiss Plaintiff's equal protection claim.

## II. Substantive Due Process Claim

To state a substantive due process claim predicated on a deprived property interest, the plaintiff must demonstrate that (1) the state's decision was arbitrary and irrational, and (2) the state committed a separate constitutional violation or the state law remedies are inadequate. *Contreras v. City of Chi.*, 119 F.3d 1286, 1295 (7th Cir. 1997).

Defendants argue that Plaintiff has not alleged that the state committed a separate constitutional violation or that the state law remedies are inadequate. Defendants maintain that Plaintiff's equal protection claim does not constitute a separate constitutional violation. However, the Seventh Circuit has not held that an equal protection claim does not qualify as a separate constitutional violation for purposes of a substantive due process claim. An equal protection claim is distinct from a substantive due process claim because the equal protection clause prohibits discrimination based on membership in a protected class and differential treatment of an individual from others similarly situated, whereas the due process clause forbids arbitrary action irrespective of an individual's membership in a protected class or the government's more favorable treatment of similarly situated individuals. Because Plaintiff alleges an equal protection claim, Plaintiff has alleged a separate constitutional violation sufficient to sustain the substantive due process claim.

Defendants also contend that the Court should dismiss Plaintiff's duplicative substantive due process claim because more specific constitutional provisions protect Plaintiff's rights, including the Fourteenth Amendment's equal protection clause and the Fifth Amendment's takings clause. When an explicit textual source of constitutional protection applies to the allegedly wrongful conduct, that amendment governs the analysis rather than the more generalized notion of substantive due process. *See, e.g.,*

*Albritton v. Vill. of Dolton*, 2011 WL 4501418, at *5 (N.D. Ill. Sept. 28, 2011) (dismissing duplicative substantive due process claim) (citing *Graham v. Connor*, 490 U.S. 386, 395 (1989)). There is no need to decide at the pleadings stage which constitutional provision necessarily governs Plaintiff's claims. As the case evolves, Plaintiff's substantive due process claim survives to the extent it is based on facts distinct from those underlying Plaintiff's equal protection claim and voluntarily dismissed takings claim.

### III. Civil RICO Claim

To establish a RICO claim under 18 U.S.C. § 1962(c), a plaintiff must prove (1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity. *Jennings v. Auto Meter Prods., Inc.*, 495 F.3d 466, 472 (7th Cir. 2007). A pattern of racketeering activity consists of at least two predicate acts of racketeering committed within a ten-year period. *Id.* The predicate acts must be related to each other and pose a threat of continued criminal activity. *Id.* "[R]acketeering activity" encompasses various acts violating state and federal law, including bribery or extortion under state law and bribery, mail fraud, and extortion under federal law. 18 U.S.C. § 1961(1). Defendants argue that Plaintiff has not adequately alleged a pattern of racketeering activity.

Plaintiff contends that Defendants' racketeering activity includes three predicate acts. First, Plaintiff relies on the October 2011 letter offering for Glenwood to purchase

the Shopping Center at a price below fair market value. According to Plaintiff, that act is chargeable as mail fraud under 18 U.S.C. § 1341. However, Plaintiff's complaint does not adequately allege mail fraud as a predicate act for two reasons. First, Plaintiff does not identify the mail fraud statute or specifically allege that Defendants committed mail fraud in the complaint. Second, Plaintiff does not allege mail fraud with particularity as required by Federal Rule of Civil Procedure 9(b). *See Slaney v. Int'l Amateur Athletic Fed'n*, 244 F.3d 580, 599 (7th Cir. 2001). To allege mail fraud with particularity, Plaintiff must allege the "identity of the person who made the representation, the time, place and content of the misrepresentation, and the method by which the misrepresentation was communicated" to Plaintiff. *Id.* Although Plaintiff generally refers to unwarranted citations for building code violations, Plaintiff fails to allege the time, place, or content of any particular citation. Additionally, although Plaintiff complains that Defendants interfered with existing and prospective tenants, Plaintiff does not specifically allege the content of any misrepresentation made to those tenants. Accordingly, Plaintiff cannot rely on the October 2011 letter to establish mail fraud as a predicate act.

Aside from the letter, Plaintiff maintains that Defendants' racketeering activity includes two other predicate acts. Specifically, Plaintiff points to a statement made in September 2009 by an individual speaking on behalf of Durkin that Plaintiff needed to

do "public relations" work, and Durkin's September 2010 request for rent-free use of the Shopping Center for his election campaign. According to Plaintiff, these acts are chargeable as either attempted extortion under 18 U.S.C. § 1951, bribery under 720 Ill. Comp. Stat. 5/33-1(e), or official misconduct under 720 Ill. Comp. Stat. 5/33-3.

Defendants argue that the alleged acts do not constitute extortion, bribery, or official misconduct because Plaintiff did not allege that Durkin actually obtained financial contributions or campaign space or that Durkin did so in exchange for the performance of any act. Defendants' argument lacks merit for two reasons. First, Durkin's attempted extortion and mere solicitation of financial contributions or campaign space for the performance of any act is sufficient to constitute a violation of these statutes. 18 U.S.C. § 1951 (noting that attempted extortion constitutes violation of Section 1951); 720 Ill. Comp. Stat. 5/33-3(e) (soliciting fee or reward for performance of any act constitutes official misconduct); 720 Ill. Comp. Stat. 5/33-1(e) (soliciting property or personal advantage in exchange for influencing the performance of any act constitutes bribery). Second, Plaintiff alleges that it understood Durkin's request as an ultimatum to provide financial benefits or suffer adverse consequences. Therefore, the allegations relating to Durkin constitute two predicate acts.

Defendants also argue that Plaintiff has not adequately alleged continuity (i.e., that the predicate acts pose a threat of continued criminal activity). The continuity

requirement reflects Congress's intent that RICO target long-term criminal behavior. *Jennings*, 495 F.3d at 473. A RICO plaintiff must allege facts supporting the existence of open-ended or closed-ended continuity. *Id.*

A plaintiff can show open-ended continuity by pointing to a course of criminal activity that is short-lived but shows clear signs of threatening to continue into the future. *Id.* Open-ended continuity does not exist when the alleged scheme has a natural ending point because the plaintiff cannot show a continuing threat of criminal activity. *Roger Whitmore's Auto. Servs., Inc. v. Lake Cnty., Ill.*, 424 F.3d 659, 674 (7th Cir. 2005). For example, in *Roger*, the Seventh Circuit held that no continuing threat existed because the defendants' alleged scheme to raise campaign funds naturally ended on the election date. *Id.* Here, Plaintiff's alleged predicate acts both relate to Durkin's attempt to obtain election contributions or rent-free campaign space. Like in *Roger*, the complaint's allegations show that no continuing threat exists that Durkin will attempt to improperly obtain contributions or campaign space because the alleged scheme naturally ended when Durkin was elected. Because Plaintiff cannot establish open-ended continuity, the Court examines the allegations for a plausible showing of closed-ended continuity.

A plaintiff can show closed-ended continuity by pointing to a course of criminal conduct that has ended but endured for such a substantial period of time that the duration and repetition of the activity carry an implicit threat of future harm. *Jennings*, 495 F.3d

at 473. Courts consider many factors when analyzing continuity, including (1) the number and variety of predicate acts and the length of time over which they were committed, (2) the number of victims, (3) the presence of separate schemes, and (4) the occurrence of distinct injuries. *Id.* (citing *Morgan v. Bank of Waukegan*, 804 F.2d 970, 975-76 (7th Cir. 1986)).

Here, Durkin's conduct spanned a one-year period and included two predicate acts that both relate to Durkin's campaign. Perhaps the most important element of RICO continuity, such a short time frame weighs against a finding of continuity. *See Jennings*, 495 F.3d at 474-75 (finding that ten months was too short to establish continuity); *Roger*, 424 F.3d at 673 (noting that courts have found closed periods of several months to several years not substantial enough to satisfy continuity). Although Plaintiff attempts to broaden the time period by referring to other acts, Plaintiff can only establish continuity based on predicate acts and has not sufficiently alleged that those other acts constitute predicate acts under RICO. *See Jennings*, 495 F.3d at 474. Further, the two alleged predicate acts relate to a single scheme by Durkin to obtain campaign contributions or rent-free space. In addition, Plaintiff identifies no other victim of this scheme or any distinct injuries arising from the scheme since he rebuffed Durkin's requests. Because the predicate acts lack in number and variety, relate to only one

scheme, affect no other victim, and cause no distinct injuries, Plaintiff's allegations do not establish closed-ended continuity.

Accordingly, the Court dismisses Plaintiff's RICO claim. To the extent Plaintiff believes it can allege facts supporting a RICO claim, Plaintiff must request leave to amend its complaint.

## IV. State Law Claim

Defendants move to dismiss Plaintiff's supplemental state law claim upon this Court's dismissal of Plaintiff's federal claims. Because Plaintiff's equal protection and substantive due process claims withstand Defendants' motion to dismiss, dismissal of the supplemental state law claim is not appropriate.

## CONCLUSION

For the foregoing reasons, the Court grants in part and denies in part Defendants' motion to dismiss. Additionally, the Court dismisses all claims against Gayden without prejudice.

_____
Charles P. Kocoras
United States District Judge

Dated:   April 2, 2012