IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| GLENWOOD HALSTED LLC, an Illinois limited liability company, ) ) ) Plaintiff, ) ) vs. ) ) VILLAGE OF GLENWOOD, an Illinois ) municipal corporation, KERRY ) DURKIN, both individually and ) officially as the Mayor of the ) Village of Glenwood, KEVIN WELSH, ) both individually and as the ) building inspector and employee of ) the Village of Glenwood. ) ) Defendants. ) | No. 11-CV-6772<br><br>Judge Charles P. Kocoras<br><br>Magistrate Judge Arlander Keys |

**MEMORANDUM OPINION AND ORDER**

Currently before the Court is Plaintiff's Motion to Compel *In Camera* Inspection of Documents Withheld on Privilege Grounds. Plaintiff is a company that owns a shopping center complex (the "Shopping Center") in Glenwood, Illinois. Plaintiff alleges that, beginning in 2008, Defendants began to scheme to diminish the value of the shopping center and force Plaintiff to sell it to Glenwood or Defendants' friends at a substantially reduced price. During discovery, Defendants initially refused to produce 17 documents, claiming that they fall within the ambit of either the attorney-client privilege or the deliberative process privilege. Defendants now concede that all or part of at least 10 documents should not have been withheld, however they maintain that the rest still fall within one of the two privileges. Plaintiff's contend

that Defendants fail to meet their burden of proving the documents are entitled to such protection. For the reasons set forth below, Plaintiff's motion is granted in part, and denied in part.

## Background

Plaintiff alleges that, between 2008 and 2011, Defendants sought to diminish the value of the Shopping Center and force Plaintiff to sell it at a substantially reduced price by influencing Plaintiff's existing and prospective tenants to leave the Shopping Center or to not rent form Plaintiff. During discovery, Plaintiff requested Defendants to produce several documents for an *in camera* inspection by the Court and has asked the Court to order Defendants to produce any non-privileged documents. In the Response, filed on December 10, 2012, Defendants agreed to voluntarily produce several documents in their entirety.[1] However, Defendants maintain that the rest of the documents are shielded by either the attorney-client privilege, the deliberative process privilege, or a combination thereof. Plaintiff contends that the attorney-client privilege's narrow scope is not applicable to documents such as those herein. Moreover, Plaintiff argues the deliberative process privilege is additionally inapplicable for several reasons, including that it

---

[1] As of the date of their response, Defendants had agreed to produce the following documents to Plaintiff: 1532-1533, 3613-3614, 3658-3659, 3737, 3816-3818, 3844-3848, and 3955-3956. Defs.' Resp. 4 n.2.

2

only shields government decision makers.  The Court will address each document in turn.

## Discussion

A. Attorney-Client Privilege

The attorney-client privilege protects confidential communications between a client and his attorney for the purpose of obtaining legal advice.  *Acosta v. Target Corp.*, 281 F.R.D. 314, 321 (N.D. Ill. 2012); *Square D Co. v. E.I. Electronics, Inc.*, 264 F.R.D. 385, 389 (N.D. Ill. 2009).  In assessing whether the privilege applies, "the focus must always remain on whether confidential legal advice is revealed in a document." *Smithkline Beecham Corp. v. Apotex Corp.*, 193 F.R.D. 530, 537 (N.D. Ill. 2000).

The Seventh Circuit has stated that the attorney-client privilege applies only where the party seeking to assert the privilege establishes the following: (1) that legal advice of any kind was sought (2) from a lawyer in his capacity as such, (3) the communications related to that purpose, (4) they were made in confidence (5) by the client and/or his agent, (6) were at his instance permanently protected (7) from disclosure by himself or by the legal adviser, (8) unless waived. *United States v. White*, 950 F.2d 426, 430 (7th Cir.1991) (noting that communications are privileged only if the statements do, in fact, reveal the substance of a confidential communication.)

3

"The doctrine is a common law privilege that can be explicitly or implicitly waived by the client and is subject to a number of restrictions and exceptions." *Id.* Because the attorney-client privilege protects only confidential communications, any disclosure of privileged communications to individuals outside the attorney-client relationship destroys the privilege. *Id. Burden-Meeks v. Welch*, 319 F.3d 897, 899 (7th Cir. 2003) ("disclosure to a third-party almost invariably surrenders the privilege;" privilege over a document prepared by the Intergovernmental Risk Management Agency, an inter-governmental body, was waived by disclosure to the defendant mayor).

The burden of establishing the essential elements of the attorney-client privilege, including the fact that the document was not disclosed to non-privileged recipients, rests with Defendants, as the party asserting the privilege. *Acosta*, 281 F.R.D. at 321-22; *Smithkline Beecham*, 193 F.R.D. at 534. Moreover, merely sending a communication to an attorney does not cloak a document in the attorney-client privilege. *Stafford Trading, Inc. v. Lovely*, No. 05-C-4868, 2007 WL 611252 (N.D. Ill. Feb. 22, 2007).

Additionally, documents prepared for business purposes or for the purpose of obtaining advice on "political, strategic, or policy issues" are not protected by the attorney-client privilege. *Evans v. City of Chicago*, 231 F.R.D. 302, 312-14 (N.D. Ill. 2005)

(communications between governor and governor's counsel reflecting political advice, not legal advice, were not privileged). "While it is true that solely personal or business advice is not protected by the attorney-client privilege, legal advice relating to business matters clearly is." *Stafford Trading, Inc.*, 2007 WL 611252, at *2.

B. Deliberative Process Privilege

The deliberative process privilege applies to pre-decisional "communications that are part of the decision-making process of a governmental agency, and covers documents that reflect advisory opinions, recommendations, and deliberations comprising part of the process by which governmental decisions and policies are formulated." *Lawrence E. Jaffe Pension Plan v. Household Int'l, Inc.*, 239 F.R.D. 508, 514 (N.D. Ill. 2006). The purpose of the privilege is to protect "open and frank discussion among" government decision makers. *Id.* at 514-15. "To fall within the privilege, material must relate to the formulation or exercise of agency policy oriented judgment." *Allen v. Chicago Transit Authority*, 198 F.R.D. 495, 502 (N.D. Ill. 2001).

A party may support a deliberative process privilege claim by meeting three requirements: (1) the department head must make a formal claim of privilege; (2) the responsible official must demonstrate, typically by affidavit, precise and certain reasons for preserving confidentiality; and (3) the official must

5

specifically identify and describe the documents. *Lawrence E. Jaffe*, 239 F.R.D. at 515. If these requirements are met, the burden shifts to the party seeking disclosure to show a "particularized need" for the documents." *Id*. This requires consideration of: (1) the relevance of the documents; (2) the availability of other evidence on the subject; (3) the government's role in the litigation; (4) the seriousness of the litigation and the issues involved; and (5) the degree to which disclosure would chill future deliberations. *Id*. at 515.

**I. Document 151**

Document 151 is a May 14, 2011 e-mail from Kerry Durkin ("Mayor Durkin"), the Mayor of the Village and a defendant, to: (1) John Donahue ("Mr. Donahue"), the Village's in-house, corporation counsel; (2) Donna Gayden ("Ms. Gayden"), the Village's Administrator and a former defendant; (3); Kevin Welsh ("Mr. Welsh"), the Village's Fire Department Chief, Building Department Director and a defendant; (4) Patrick McAneney "Mr. McAneney"), the Village's Public Works Director, and (5) Ed Tunelius ("Mr. Tunelius"), the Village's Engineer.

Defendants contend that this e-mail is shielded both by the attorney-client privilege and the deliberative process privilege. With regard to the attorney-client privilege, Defendants argue that because Mayor Durkin sent it in an effort to seek legal advice from John Donahue, the Village's in-house counsel, relating

6

to a variety of topics, including the legal hookup requirements for sewers, the ownership of sewers, the legality of certain courses of action towards the Save-A-Lot, a prospective grocer tenant of Plaintiff, as well as how certain courses of action could affect potential eminent domain proceedings by the Village against Plaintiff, that it is protected. Defs.' Resp. 4-7.

Plaintiff argues that the attorney-client privilege is not available because Mr. Tunelius, the Village Engineer, was a third-party recipient of the e-mail, and there is no indication that his presence helped facilitate legal advice from counsel to client. Moreover, Plaintiff argues that, during the timing of the e-mail, the Village was beginning to pursue eminent domain of the Shopping Center and it is unlikely an engineer assisted in the provision of legal advice on that subject. Pl.'s Mot. 6. The Court agrees and finds that Defendants have not met their burden of proving this e-mail protected by the attorney-client privilege, especially in light of its third-party disclosure to the Village Engineer, who would have not been able to render any legal advice on the prospective tenancy of the Shopping Center nor the process of eminent domain proceedings.

Next, Defendants argue that, if the attorney-client privilege is unavailable, the e-mail is nonetheless protected by the deliberative process privilege, as the e-mail is predecisional and relates to a discussion of a potential course of action towards

the prospect of Save-A-Lot leasing space with Plaintiff. Defs.' Resp. 6. The e-mail is deliberative and opens up policy discussion about the Village's position towards a Save-A-Lot and eminent domain proceedings. However, the Court disagrees as Mr. Tunelius is not a government decision maker, which the privilege specifically seeks to protect. Moreover, because Defendants' intent and misconduct are directly at issue, the deliberative process privilege does not apply. *See United States v. Lake County Bd. of Commissioners*, 233 F.R.D. 523, 527 (N.D. Ind. 2005)(the deliberative process privilege yields when government misconduct is the focus of the lawsuit). Therefore, after taking both privileges into account, the Court finds this e-mail not privileged and, therefore, it must be produced.

**II. Documents 1620-1621**

These documents contain a May 11, 2011 e-mail from Mayor Durkin to the Village's in-house counsel, Mr. Donahue, Ms. Gayden (Village Administrator), and Mr. Welsh (Fire Department Chief, Building Department Director, and defendant). Defendants argue that this e-mail is protected by the deliberative process privilege.[2] Prior to writing the e-mail, Mayor Durkin and Ms.

---

[2] Defendants' response argues for protection via the deliberative process privilege, however, Defendants submitted two privilege logs to Plaintiff and attached them as exhibits to their response wherein they solely claim an attorney-client privilege to the documents. Plaintiff argues that as such, Defendants have now waived their claim to a deliberative process privilege. The Court understands Plaintiff's frustration, but will allow the claim to now be raised.

8

Gayden met with Plaintiff's owners to discuss the Boards' request for a sale price on the Glenwood Plaza (Document 1620). Mayor Durkin then wrote the May 11, 2011 e-mail after this meeting and in advance of another meeting with Plaintiff's owners and Save-A-Lot., which was expected to take place on May 12, 2012. Durkin Aff. 15. Mayor Durkin wrote the e-mail to open up a discussion between Village decision makers about what the Village of Glenwood's policies and position would be towards the development of Plaintiff's property in general and to discuss what the Village's policies and position would be going into the May 12, 2012 meeting with Plaintiff's owners. Durkin Aff. 14-15.

Mayor Durkin raised a discussion of multiple policies, including what the Village's response should be to the sale price Plaintiff demanded for its property, the many potential courses of action the Village could take towards the property (*e.g.* negotiation, acquisition, eminent domain, providing assistance with development (Document 1621), as well as discussion regarding other policies. Durkin Aff. 16.

Defendants argue that these documents are protected by the deliberative process privilege because they are predecisional, deliberative, and between government decision makers. The Court agrees, and finds that the e-mail is predecisional, because, at that point, Mayor Durkin had not yet attended the May 12, 2012 meeting with Plaintiff's owners and Save-A-Lot's representative.

9

Additionally, the Court finds the e-mail deliberative, as it was written with the purpose to reach a decision amongst the decision makers on several issues.

The Court finds these documents protected by the deliberative process privilege and, therefore, they should not be produced. However, Plaintiff is able to depose Mayor Durkin and ask his views of the property and tenants.

### III. Documents 1624-1628

Documents 1624-1628 contain four e-mails, two of which Defendants argue are privileged. Document 1624 contains a May 12, 2011 e-mail from Mr. Welsh (Fire Department Chief, Building Department Director, and defendant) to Mayor Durkin, Ms. Gayden, and Mr. Donahue in response to Mayor Durkin's May 11, 2011 e-mail contained in Documents 1620-1621, discussed above. Documents 1624-1626 also contain an identical copy of the privileged Mayor Durkin May 11, 2011 e-mail. Documents 1626-1628 contain e-mails from Jon Siner (Chairman of the Village of Glenwood Plan Commission) and Warren Linden (a former member of the Plan Commission). Defendants agree to produce the e-mails from Jon Siner and Warren Linden to Plaintiff, however, argue that Mr. Welsh's and Mayor Durkin's e-mail are privileged. The Court agrees.

Mr. Welsh's response to Mayor Durkin's e-mail is protected by the deliberative process privilege for the same reasons that Mayor

10

Durkin's e-mail is protected above. Mr. Welsh's response is part of the discussion initially raised by Mayor Durkin regarding potential courses of action towards Plaintiff's property. *See* Durkin Aff. 20. Mr. Welsh's e-mail consists of his point-by-point response to the issues Mayor Durkin raised for discussion in his May 11, 2011 e-mail. The identical copy of Mayor Durkin's May 11, 2011 e-mail contained on Documents 1624-1626 is also protected.

The Court finds Document 1624 through portions of document 1626 protected by the deliberative process privilege, and, therefore, they should not be produced. Defendants have agreed to produce the rest of Documents 1624-1628, authored by Mr. Siner and Mr. Linden. Defs.' Resp. 8-9.

**IV. Documents 1633-1635**

Documents 1633-1635 contain three e-mails. Documents 1633-1634 contain another copy of Mayor Durkin's May 11, 2011 e-mail. The Court finds this e-mail protected by the deliberative process privilege for the reasons discussed above. Documents 1633-1635 also contain identical copies of the e-mails from Mr. Jon Siner and Mr. Warren Linden, also found on Documents 1626-1628. Defendants have acknowledged that the e-mails authored by Mr. Siner and Mr. Linden will be produced. Defs.' Resp. 8-10.

Therefore, Documents 1633-1634 are privileged and should not be produced, however, the portion that contains the e-mails from Mr. Siner and Mr. Linden are not privileged and must be produced.

11

**V. Documents 1636-1640**

Documents 1636-1640 contain a complete e-mail thread discussion of the issues first raised by Mayor Durkin in his May 11, 2011 e-mail. *See* (Documents 1620-1621). Document 1636 contains a May 12, 2011 e-mail from Mayor Durkin to Mr. Welsh, Ms. Gayden, and Mr. Donahue that is in reply to the May 12, 2011 e-mail from Mr. Welsh. Document 1636 also contains another May 12, 2011 e-mail from Mr. Welsh in response to Mayor Durkin's May 12 reply. Defendants argue, again, that the entire discussion between Mayor Durkin and Mr. Welsh is protected by the deliberative process privilege. In his May 12, 2011 e-mail, Mayor Durkin replies to the points raised by Mr. Welsh. Mayor Durkin expresses his ideas as to the best way to approach Plaintiff's property. The e-mail thread is all part of an ongoing discussion between the Village's decision makers regarding what decisions the Village should make relating to Plaintiff's property. Durkin Aff. 19-20. Therefore, the Court finds that Document 1636 in its entirety should not be produced.

Plaintiff argues that the discussion does not involve "policy"-oriented governmental decision making, and, thus, opines it should not be protected by the deliberative process privilege. Pl.'s Reply 7-8. Although the discussion certainly does not relate to any high-level, governmental policy theory, it, nonetheless, relates to an important decision the Village must

12

make for itself amongst the Village decision makers, and, therefore, the Court finds it privileged.

The rest of Documents 1636-1640 contain e-mails identical to those discussed above, including: (1) Mr. Welsh's May 12, 2011 e-mail (Documents 1636-1637: privileged); (2) Mayor Durkin's May 11, 2011 e-mail (Documents 1637-1639: privileged); (3) Mr. Jon Siner's May 11, 2011 e-mail (Documents 1639-1640: will be produced); and (4) Mr. Warren Linden's May 10, 2011 e-mail (Document 1640: will be produced).

**VI. Documents 1650-1652**

Defendants seek to protect one e-mail contained within Documents 1650-1652. Document 1650 contains a May 9, 2011 e-mail from Mr. Welsh to Mayor Durkin, Ms. Gayden, and Mr. Donahue. Defendants argue that this e-mail is protected by the attorney-client privilege and the deliberative process privilege, and that other than this e-mail, Defendants will produce to Plaintiff the remaining portions of Documents 1650-1652.

The Court agrees that Mr. Welsh's May 9, 2011 e-mail is protected by the attorney-client privilege, as it asks for Mr. Donahue's legal opinion about Plaintiff's behavior and its relation to potential litigation, and is not waived by any non-privileged third party disclosure. Because the Court finds the one contested e-mail protected by the attorney-client privilege,

it will not address Defendants' argument for protection under the deliberative process privilege, as well.

**VII. Document 1653**

Document 1653 contains three e-mails. The e-mail at the bottom of the thread is a May 9, 2011 e-mail from Mayor Durkin that Defendants agree to produce to Plaintiff. Defs.' Resp. 11. Document 1653 also contains a May 9, 2011 e-mail from Mr. Donahue to Mr. Welsh, Mayor Durkin, and Ms. Gayden. Defendants argue that it is protected by the attorney-client privilege. The Court agrees, as it contains Mr. Donahue's opinion as to the legal steps the Village should take with respect to Save-A-Lot's interest in renting from Plaintiff.

At the top, Document 1653 contains a May 9, 2011 response to Mr. Donahue's e-mail from Mayor Durkin to Mr. Donahue, Ms. Gayden, Ms. Welsh, and Mr. Tunelius. Defendants argue that this e-mail is protected by the attorney-client privilege. The Court disagrees. In the e-mail, Mayor Durkin asks Mr. Donahue to perform a title search for the purpose of finding out who owns the sewer at Plaintiff's property. He also asks questions relating to ownership of the sewer and a Village ordinance. Mr. Tunelius (the Village Engineer) is copied on the e-mail. As discussed above, Mr. Tunelius, a third-party, non-privileged recipient of the e-mail, breaks the bounds of the attorney-client privilege. Defendants' argument that he was included as an expert on the

14

Village's public sewers is unavailing. The Court finds no indication that his presence helped facilitate legal advice from counsel to client, nor was it necessary to aid Mr. Donahue's search for the title or understanding of the subdivision ordinance mentioned by Mayor Durkin. Thus, Mr. Tunelius' presence breaks the attorney-client privilege, and the portion of Document 1653 that contains this email must be produced.

**VIII. Documents 1667-1668**

These documents contain a May 23, 2011 e-mail from Mr. Tunelius (Village Engineer) to Mayor Durkin, Mr. Donahue, Ms. Gayden, and Mr. McAneney (Village's Public Works Director) in response to Mayor Durkin's May 14, 2011 non-privileged e-mail. *See* (Document 151). They also contain an identical copy of Mayor Durkin's May 14, 2011 non-privileged e-mail. *See* (Document 151). Defendants agree to produce Mr. Tunelius' e-mail, but not Mayor Durkin's e-mail, which they argue is privileged for the reasons discussed above regarding Document 151. Defs.' Resp. 12. However, as the Court discussed above, Document 151 must be produced, as well.

**IX. Documents 3781-3784**

Documents 3781-3784 contain two e-mails. Defendants argue that both are protected, however, the Court finds only Mr. Donahue's response e-mail privileged. Documents 3783-3784 contain a November 1, 2010 e-mail from Mr. Jon Siner (the Chairman of the

Village's Plan Commission) to Mr. Donahue and Mayor Durkin. *See* (Document 3785). In the e-mail, Mr. Siner asks Mr. Donahue to review a "Master Plan" prepared by Hitchcock Design Group ("Hitchcock"), a consultant of the Village. The Village hired Hitchcock to help prepare a plan evaluating the Village's options to redevelop the area that includes Plaintiff's property. The e-mail inquires of Mr. Donahue for his confidential legal advice, but in no way contains his or other legal advice or opinions. In assessing whether the privilege applies, "the focus must always remain on whether confidential legal advice is revealed in a document." *Smithkline Beecham Corp.*, 193 F.R.D. 537. Moreover, Mr. Siner is not employed by the Village. Therefore, the Court finds this e-mail to not be protected by the attorney-client privilege, and therefore, Documents 3783-3784 must be produced.

On the contrary, Documents 3781-3783 contain Mr. Donahue's detailed November 4, 2011 response to Mr. Siner's request. Mr. Donahue's e-mail was also sent to Mayor Durkin. Mr. Donahue's e-mail is marked as "Attorney-Client privileged-not for disclosure" and contains Mr. Donahue's opinions on a variety of topics, including what the Village must do to exercise the power of eminent domain and his legal opinion of the Master Plan. The Court finds Mr. Donahue's response to Mr. Siner protected by the attorney-client privilege. Thus, Documents 3781-3783 are privileged and should not be produced to Plaintiffs.

**X. Documents 3785-3786**

These documents contain Mr. Jon Siner's November 1, 2010 e-mail to Mr. Donahue and Mayor Durkin. Defendants opine that this e-mail is protected by the attorney-client privilege. As discussed above, the inquiry to Mr. Donahue contains no legal advice, and Mr. Siner is not employed by the Village. Therefore, the Court finds that Documents 3785-3786 must be produced, as they are not protected by the attorney-client privilege.

**Conclusion**

For the reasons set forth above, Plaintiff's motion is granted in part, and denied in part.

Dated: January 11, 2013

ENTER:

_____
ARLANDER KEYS
United States Magistrate Judge