UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| GLENWOOD HALSTED LLC, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) 11 C 6772 |
| | ) |
| VILLAGE OF GLENWOOD, an | ) |
| Illinois municipal corporation, *et al.*, | ) |
| | ) |
| Defendants. | ) |

## **MEMORANDUM OPINION**

This matter comes before the Court on the motion of third party witness Joe Letke ("Letke") to reconsider this Court's previous May 9, 2014 order ("Order") requiring compliance with an outstanding records subpoena. For the following reasons, the Letke's motion is granted and the Order is vacated.

## BACKGROUND

On April 10, 2014, the Defendants Village of Glenwood ("Village"), Kerry Durkin and Kevin Welsh (collectively "Defendants") filed a motion to compel Letke to provide the numerous documents specified in their records subpoena. Letke did not respond to Defendants' motion to compel. On May 9, 2014, this Court granted Defendants' motion to compel Letke to comply with the terms of the asserted records subpoena. *See Glenwood Halsted LLC v. Village of Glenwood, et al.*, No. 11 C 6772,

2014 (N.D. Ill. May 9, 2014). On May 15, 2014, Letke moved for reconsideration of this Court's Order based on his Instanter Motion in opposition of Defendants' motion to compel.

The underlying facts have already been set forth in our prior opinion. Accordingly, only the facts relevant to the instant motion will be discussed. On September 26, 2011, Plaintiff Glenwood Halsted LLC ("Glenwood Halsted LLC") filed suit against the Defendants alleging that in 2008 the Defendants schemed to diminish the value of a shopping complex owned by Glenwood Halsted LLC. It is alleged that the scheme began when Glenwood Halsted LLC sought the Village's approval and cooperation to establish Tax Increment Financing ("TIF") in an attempt to improve the functionality of Glenwood Halsted LLC's shopping complex. Letke, an accountant, was hired by Glenwood Halsted LLC to assist in creating a TIF proposal to present to the Defendants.

Following the filing of the instant case, Letke was deposed by the Defendants on December 18, 2013. Letke testified about his involvement in the development of the TIF proposal, his familiarity with the shopping complex, his dealings with the Village, his work on other municipality TIFs, and his interaction with the owners of Glenwood Halsted LLC. Letke also named several documents that related to the topics he discussed that he may have in his possession.

However, in the midst of the deposition, Letke fell ill and the deposition ended prematurely. Subsequent attempts by the Defendants to reschedule the remaining time allotted for Letke's deposition were not fruitful. On January 16, 2014, the Defendants issued a records subpoena to Letke requesting numerous documents. Initially Letke's attorney, Lou Karnezis ("Karnezis"), accepted the subpoena and informed the Defendants that he would provide the requested documents by the end of the week. At the time of Karnezis' acquiesce, he was unaware that Letke had hired a criminal defense attorney Dean Polales ("Polales"), to assist in dealing with a broad criminal investigation. On January 30, 2014, Polales met with a federal prosecutor to discuss an ongoing federal grand jury investigation into Letke's involvement with several municipal TIF projects. The criminal investigation focused on Letke's dealings with the now defunct real estate development of the Harvey Hotel, in Harvey, Illinois. In light of the now apparent criminal investigation, the documents set forth in the records subpoena were never produced and eventually Karnezis informed the Defendants that Letke was invoking his Fifth Amendment privilege.

**LEGAL STANDARD**

The Fifth Amendment privilege against self-incrimination may be invoked in any criminal or civil matter when an individual's testimony creates a possibility of criminal prosecution. *Kastigar v. United States*, 406 U.S. 441, 444 (1972). The

privilege is applicable in response to specific inquires that call for an admission of a crime or objectively create "some tendency" to subject the individual to criminal liability. *In re High Fructose Corn Syrup Antitrust Litigation*, 295 F.3d 651, 663-64 (7th Cir. 2002). When the court is considering the right against self-incrimination, the privilege should be construed broadly in favor of the right. *In re Corrugated Container Antitrust Litigation*, 661 F.2d 1145, 1150 (7th Cir. 1981).

## DISCUSSION

The parties contest whether: (1) Letke waived his Fifth Amendment privilege by testifying at the Defendants' December 2013 deposition; and (2) whether the production of the documents sought is protected by the Fifth Amendment. Each issue will be dealt with in turn.

### I. Waiver

The Defendants contend that Letke waived his Fifth Amendment privilege by testifying in the December 2013 deposition for five hours. The Defendants posit that Letke must have or should have known that he was a target of a criminal investigation prior to the deposition due to his numerous problematic dealings with other municipalities and an investigative newspaper article which was critical of the failed development of the Hotel Harvey project. In choosing to proceed with the deposition, Letke waived his Fifth Amendment protections by disclosing incriminating evidence.

To support their position, the Defendants argue that the facts of *Rogers v. United States*, 340 U.S. 367 (1951) are analogous to Letke's prior disclosure of information and subsequent invocation of the Fifth Amendment. In *Rogers*, Jane Rogers brought certiorari after being found in contempt based on her refusal to answer questions posed by a grand jury and the court. *Rogers*, 340 U.S. at 368. Rogers testified before a federal grand jury that she had "held the position of Treasurer of the Communist Party of Denver until January, 1948, and that, by virtue of her office, she had been in possession of the records and testified that she had turned them over to another. But [after her testimony ended and she returned the following day to testify] she refused to identify the person to whom she had given the Party's books," asserting her Fifth Amendment privilege against self-incrimination. *Id*. at 368-370. The Court held that Rogers could not justify her refusal to answer questions regarding the identity of the person to whom she turned over the Party's books on the ground of privilege against self-incrimination because this testimony would be no more incriminating than her previous voluntary disclosure. *Id.* at 374-375. Although *Rogers* stands for the proposition that an individual cannot disclose incriminating facts and then rely on the Fifth Amendment to avoid disclosing further details, Letke's deposition testimony and subsequent invocation of the Fifth Amendment is distinct. In *Rogers*, the testimony of the witness was given within the confines of a grand jury

criminal investigation, where a determination of criminal activity was being gauged. Letke's testimony on the other hand, was given in the confines of a deposition, in a civil case that he was not a party to, concerning work he performed for Glenwood Halsted LLC. The nature of the forum where the testimony was given is pivotal. Letke never gave any indication, during his December 2013 deposition, that he knew any of his work for various municipalities was being criminally investigated. Without a threat of legal peril in the disclosure of information, Letke did not think he was disclosing incriminating information. As a result, Letke did not have a need to utilize the protections of the Fifth Amendment. The Court finds that Letke did not waive his Fifth Amendment protections by giving testimony in his December 2013 deposition.

## II. Records Sought in the Subpoena

Letke seeks to invoke his Fifth Amendment privilege to avoid complying with the Defendants' records subpoena. Letke argues that the records subpoena is tantamount to compelling his testimony and therefore barred by the Fifth Amendment. Defendants seek nine separate categories of documents related to Letke's work with Glenwood Halsted LLC. Defendants argue that the documents sought were all referenced and discussed at length during his December 2013 deposition. Thus the disclosure of the documents would not be more incriminating than his previous voluntary disclosures. To analyze Letke's Fifth Amendment claim, we are mindful

that the privilege against self-incrimination only extends to information that is both testimonial and incriminating. *Fisher v. United States*, 425 U.S. 391, 414 (1976).

**A. Testimonial Nature of Production**

Statements are testimonial when "made under circumstances which would lead an objective witness reasonably to believe that the statement would be available for use at a later trial." *United States v. Cromer*, 389 F.3d 662, 673-674 (6th Cir. 2004). Testimonial evidence includes "prior testimony at a preliminary hearing, before a grand jury or at a former trial; and … police interrogations." *Michigan v. Bryant*, -- U.S. --, 131 S.Ct. 1143, 1153 (2011) (*citing Crawford v. Washington*, 541 U.S. 36, 68 (2004)). The production of documents may also be testimonial when it "communicate[s] information about the existence, custody, and authenticity" of materials. *United States v. Hubbell*, 530 U.S. 27, 37 (2000).

Letke argues that turning over the documents requested in the records subpoena would be testimonial. The records subpoena broadly requests Letke to turn over all documents in his possession or control that relate to his work on the Glenwood Halsted LLC TIF. This request includes billings records, emails and all documents related to Letke's dealings with four individuals involved with the Glenwood Halsted LLC TIF proposal, two of which are Defendants Kerry Durkin and Kevin Walsh. The breadth of the records subpoena is contrasted by Letke's limited testimony concerning

documents in his December 2013 deposition. Over the course of Letke's deposition he specifically mentions eight different pieces of paperwork that were generated in the course of his retention by Glenwood Halsted LLC. In many of those instances, Letke is uncertain if he still has possession of the records.

Letke's limited discussion of documents coupled with his uncertainty concerning the existence of those documents cannot be reconciled with the subpoenas broad request for all documentary evidence related to his work on the Glenwood Halsted TIF. The subpoena's request for "all documents in your possession, custody, or control" regarding Glenwood Plaza would require Letke to "take a mental and physical" inventory of his effects to properly address the scope of the records subpoena. *Hubbell*, 530 U.S. at 42. This accumulation of Letke's private documentary materials would prove the existence, custody, and authenticity of such records. *Id.* at 37. The Court deems Letke's relinquishment of the records specified in the Defendants' records request would be testimonial.

### B. Incriminating Nature of the Documents

Production of the requested documents also must be incriminating to be covered by the Fifth Amendment. *See Fisher*, 425 U.S. at 414. "It is for the tribunal conducting the trial to determine what weight should be given to the contention of the witness that the answer sought will incriminate him." *United States ex rel. Vajtauer v.*

*Commissioner of Immigration of Port of New York*, 273 U.S. 103, 113 (1927). The privilege against self-incrimination not only extends to answers that would in themselves support a conviction but also embraces responses that would furnish a "link in the chain of evidence needed to prosecute the claimant for a federal crime." *Hoffman v. United States*, 341 U.S. 479, 486 (1951).

Letke's attorney Polales was informed on January 30, 2014 that his client was the subject of a criminal investigation focusing on Letke's involvement in several municipalities' financial affairs. The federal prosecutor that met with Polales acknowledged that Letke's experience and expertise in assisting municipalities in setting up various forms of financing, particularly TIF financing, was of interest. The documents sought in the Defendants' records subpoena attest to Letke's experience and expertise in setting up TIFs for municipal improvements. Letke was retained by Glenwood Halsted LLC to utilize his proficiency in setting up a TIF to revitalize the Glenwood Halsted LLC shopping center. Not only would the records be direct evidence of Letke's work in the relevant areas of the grand jury investigation, the records may be utilized in a criminal prosecution to establish Letke's state of mind, intent, or lack of mistake under Federal Rule of Evidence 404(b). Therefore, the documentary evidence generated through Letke's work on the Glenwood Halsted LLC

TIF may provide "a link in the chain of evidence" needed in investigating Letke's other dealing with municipality TIFs. *Hoffman*, 341 U.S.at 486.

The Court finds that the documents called for in the Defendants' record subpoena would be testimonial and incriminating and therefore compliance with the records subpoena would be violative of the Fifth Amendment.

## CONCLUSION

For the aforementioned reasons, Letke's motion to reconsider (Doc. no. [159]) is granted. This Court's May 09, 2014 Order (Doc. no. [157]) is vacated. Status hearing is set for 7/8/2014 at 9:30 a.m.

*Charles P. Kocoras*
_____
Charles P. Kocoras
United States District Judge

Dated: June 24, 2014
_____